LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel: 212-465-1188
Fax: 212-465-1181

LAW OFFICES OF ROBERT L. KRASELNIK, PLLC
Robert L. Kraselnik (RK 0684)
271 Madison Avenue, Suite 1403
New York, NY 10016
Tel.: 212-576-1857
Fax: 212-576-1888
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| CINECIO GONZALEZ, HELEODORO GIL, NICOLAS XOCHIQUIQUISQUI GARCIA, and RIGOBERTO TETLACTLE TEPOLE, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MAROSA, INC. d/b/a FAMOUS FAMIGLIA PIZZERIA, 96 STREET PIZZA CORP. d/b/a FAMOUS FAMIGLIA PIZZERIA,FAMIGLIA-DEBARTOLO, LLC, FAMIGLIA-DEBARTOLO OPERATIONS, LLC FAMIGLIA-DEBARTOLO FRANCHISE SYSTEMS, LLC, FAMIGLIA-DEBARTOLO BRANDS, LLC, FD LEASING GROUP, LLC, FAMIGLIA INTERNATIONAL, LLC, FAMIGLIA QUEENS LLC d/b/a FAMOUS FAMIGLIA PIZZERIA, JOHN DOE CORPORATIONS 1-20, FRANK VATAJ, PAUL KOLAJ, JOHN KOLAJ, GIORGIO KOLAJ, ANTON VATAJ, FRANK IDRIZA, GINO IDRIZA, MICHAEL KOLAJ, VINNY KOLAJ, and JEFF KOLAJ, and JOHN DOES 1-40,<br><br>        Defendants.<br><br>--- | Case No.: 13-cv-8468<br><br>**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs, CINECIO GONZALEZ, HELEODORO GIL, NICOLAS XOCHIQUIQUISQUI GARCIA and RIGOBERTO TETLACTLE TEPOLE (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this First Amended Class and Collective Action Complaint against Defendants, MAROSA, INC. d/b/a FAMOUS FAMIGLIA PIZZERIA, 96 STREET PIZZA CORP. d/b/a FAMOUS FAMIGLIA PIZZERIA, FAMIGLIA QUEENS, LLC d/b/a FAMOUS FAMIGLIA PIZZERIA, JOHN DOE CORPORATIONS 1-20 (collectively the Franchisee Corporate Defendants"), FAMIGLIA-DEBARTOLO, LLC, FAMIGLIA-DEBARTOLO OPERATIONS, LLC, FAMIGLIA-DEBARTOLO FRANCHISE SYSTEMS, LLC, FAMIGLIA-DEBARTOLO BRANDS, LLC, FD LEASING GROUP, LLC, FAMIGLIA INTERNATIONAL, LLC (together the "Franchisor Corporate Defendants"), FRANK VATAJ, ANTON VATAJ, FRANK IDRIZA, GINO IDRIZA, MICHAEL KOLAJ, ANTON KOLAJ, VINNY KOLAJ and ZEF KOLAJ and JOHN DOES 1-40 (together the "Franchisee Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants"), and state as follows:

### INTRODUCTION

1.  Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) liquidated damages and (4) attorneys' fees and costs.

2.  Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3)

unpaid spread of hours premium, (4) liquidated damages, (5) statutory penalties and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.   Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.   Plaintiff, CINECIO GONZALEZ, is a resident of Queens County, New York.

6.   Plaintiff, HELEODORO GIL, is a resident of New York County, New York.

7.   Plaintiff, NICOLAS XOCHIQUIQUISQUI GARCIA, is a resident of New York County, New York.

8. Plaintiff, RIGOBERTO TETLACTLE TEPOLE, is a resident of New York County, New York.

### *The Famiglia Franchise:*

9.   Franchisor Individual Defendants, PAUL KOLAJ, GEORGIO KOLAJ and JOHN KOLAJ, are the founders of a chain of pizza restaurants known as "Famous Famiglia Pizzeria."   The three brothers opened the first Famiglia stores in 1989, and opened several others in the following years. Beginning in 2004, the KOLAJ brothers began franchising the brand. There are currently more than 80 Famiglia locations in the United States with additional locations in Mexico and China. A list of some of Defendants' locations, both company-owned and franchised, is attached as Exhibit A.

3

The corporate headquarters are located at 245 Main Street, Suite 620, White Plains, NY 10601.

10. The Franchisor Defendants currently have full ownership of eleven of the Famiglia locations. The other locations are owned by other individuals and entities through a franchise agreement. However, the Franchisor Defendants maintain significant operational control in all of the Famiglia locations.

### The Franchisor Corporate Defendants:

11. FAMIGLIA-DEBARTOLO, LLC, is the parent company of all Franchisor Corporate Defendants. It is a Delaware limited liability company with its corporate headquarters and address for service of process located at 245 Main Street, Suite 620, White Plains, NY 10601.

12. FAMIGLIA-DEBARTOLO OPERATIONS, LLC, operates the company-owned Famiglia locations. It is a Delaware limited liability company with its corporate headquarters and address for service of process located at 245 Main Street, Suite 620, White Plains, NY 10601.

13. FAMIGLIA-DEBARTOLO FRANCHISE SYSTEMS, LLC manages the franchising of the Famous Famiglia brand, including establishing franchisee agreements and operating of the franchisee locations. It is a Delaware limited liability company with its corporate headquarters located at 245 Main Street, Suite 620, White Plains, NY 10601, and an address for service of process located at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

14. FAMIGLIA-DEBARTOLO BRANDS, LLC oversees the food products of all of the Famiglia company-owned locations, including dealing with vendors and suppliers.

It is a Delaware limited liability company with its corporate headquarters located at 245 Main Street, Suite 620, White Plains, NY 10601, and an address for service of process located at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

15. FD LEASING GROUP, LLC manages the leasing of the properties for the Famiglia company-owned locations. It is a Delaware limited liability company with its corporate headquarters and address for service of process located at 245 Main Street, Suite 620, White Plains, NY 10601.

16. FAMIGLIA INTERNATIONAL, LLC, is a New York limited liability company with its corporate headquarters and address for service of process located at 245 Main Street, Suite 620, White Plains, NY 10601.

17. The Franchisor Corporate Defendants own and operate the following Famiglia locations in New York: JKF International Airport – Terminal 5, and The Westchester Mall.

### *The Franchisor Individual Defendants:*

18. PAUL KOLAJ is the Chief Executive Officer of all of the Franchisor Corporate Defendants, and a co-founder of the Famiglia brand. He also has ownership interest in the Famiglia pizzeria located at 74th Street & Roosevelt Ave. Station. Up until in or about 2011, PAUL KOLAJ had ownership interest in Franchisee Corporate Defendants, 96 STREET PIZZA CORP. and MAROSA, INC.

19. GIORGIO KOLAJ is the President of the parent company, FAMIGLIA-DEBARTOLO, LLC, and a co-founder of the Famiglia brand. Up until in or about 2011, GIORGIO KOLAJ had ownership interest in Franchisee Corporate Defendants, 96 STREET PIZZA CORP. and MAROSA, INC.

20. JOHN KOLAJ is the Chief Executive Officer of the parent company, FAMIGLIA-DEBARTOLO, LLC, and a co-founder of the Famiglia brand. Up until in or about 2011, JOHN KOLAJ had ownership interest in Franchisee Corporate Defendants, 96 STREET PIZZA CORP. and MAROSA, INC.

21. Although the franchise agreements for 96 STREET PIZZA CORP. and MAROSA, INC., franchising the locations to FRANK VATAJ, were dated January 12, 2004, the KOLAJ brothers continued to have an ownership interest and participate in the day-to-day operations of the two Famiglia locations. PAUL KOLAJ testified that he had ownership a few years prior to his testimony (taken in 2015) of 96 STREET PIZZA CORP. *(Paul Kolaj Deposition, 32:8-10)*. Furthermore, FRANK VATAJ testified that he obtained ownership of both locations from the KOLAJ brothers a few years prior to his testimony (taken in 2015), after which he immediately installed his son, ANTON VATAJ, as a manager (*Frank Vataj Deposition, 8: 24-25, 9: 2-11, 11: 3-11)*. ANTON VATAJ testified that he began managing the two Famiglia locations in 2011. (*Anton Vataj Deposition, 55: 24)*.

22. During the past six years, each of the Franchisor Individual Defendants exercised operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class by creating, amending and implementing management and operation policies and practices that are to be followed in all of the Famiglia locations, including company-owned locations and franchisee locations. Along with the franchisee owners of individual Famiglia locations, each of the Franchisor Individual Defendants exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and

conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at the Famiglia locations, including company-owned locations and franchisee locations.

23. During the past six years, each of the Franchisor Individual Defendants additionally had the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. Each of the them exercises functional control over the business and financial operations of the Famiglia locations, including company-owned locations and franchisee locations. They each ensure that managers and employees are properly trained, that the quality of the food at each location meet their standards, and that employees effectively serve and cater to customers to ensure that each of the Famiglia locations is operating efficiently and profitably.

24. During the past six years, each of the Franchisor Individual Defendants made regular announced and unannounced visits to each of the Famiglia locations. They each possess and exercise the authority to make changes in the policies and practices at each Famiglia location to ensure that the franchisor's standards and policies are being followed. Employees could complain to each of the Franchisor Individual Defendants directly regarding any of the terms of their employment, and they each would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

***The Franchisee Corporate Defendants:***

25. Upon information and belief, Franchisee Corporate Defendant, MAROSA, INC. d/b/a FAMOUS FAMIGLIA PIZZERIA, is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 2859 Broadway, New York, NY 10025 (the "111th Street Location") and an address for service of process listed as same. Franchisor Individual Defendant, PAUL KOLAJ, is listed as the Chief Executive Officer of MAROSA INC. Franchisee Individual Defendant, FRANK VATAJ, is the franchisee owner of MAROSA INC.

26. Upon information and belief, Franchisee Corporate Defendant, 96 STREET PIZZA CORP. d/b/a FAMOUS FAMIGLIA PIZZERIA, is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 734 Amsterdam Avenue, New York, NY 10025 (the "96th Street Location") and an address for service of process listed as same. Franchisor Individual Defendant, PAUL KOLAJ, is listed as the Chief Executive Officer of MAROSA INC. Franchisee Individual Defendant, FRANK VATAJ, is the franchisee owner of 96 STREET PIZZA CORP.

27. Upon information and belief, Franchisee Corporate Defendant, FAMIGLIA QUEENS, LLC d/b/a FAMOUS FAMIGLIA PIZZERIA, is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 74-20 Roosevelt Avenue, Jackson Heights, NY 11372 (the "Jackson Heights Location") and an address for service of process listed as 245 Main Street, Suite 620, White Plains, NY 10601. Franchisee Individual Defendants, ANTON VATAJ,

FRANK IDRIZA and GINO IDRIZA, are the franchisee owners of FAMIGLIA QUEENS, LLC.

28. Upon information and belief, Franchisee Corporate Defendants, JOHN DOE CORPORATIONS 1-40 d/b/a FAMOUS FAMIGLIA PIZZERIA, are various business corporations doing business as Famiglia franchise locations throughout New York, which employ FLSA Collective Plaintiffs and Class members under a common wage and hour policy. Franchisee Individual Defendants, JOHN DOES 1-40, are the franchisee owners of JOHN DOE CORPORATIONS 1-40.

### *The Franchisee Individual Defendants:*

29. FRANK VATAJ is the full owner of 96 STREET PIZZA CORP. and MAROSA INC. He acquired both locations from the KOLAJ brother in 2011. ANTON VATAJ is married to the sister of the KOLAJ brothers.

30. ANTON VATAJ is the son of FRANK VATAJ, and manages the day to day operations of the 96th Street Location and the 111th Street Location. ANTON VATAJ also owns one-third of FAMIGLIA QUEENS, LLC.

31. FRANK IDRIZA and GINO IDRIZA are co-owners of FAMIGLIA QUEENS, LLC. They manage the day to day operations of the Jackson Heights Location.

32. MICHAEL KOLAJ, ANTON KOLAJ, VINNY KOLAJ and ZEF KOLAJ are cousins of the Franchisor Individual Defendants. They have held ownership interests in the following Famgilia locations: 1398 Madison Avenue at 97th St., and White Plains.

33. Each of the Franchisee Individual Defendants exercise operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class at their respective locations. At such locations, they each exercise the power to (and also

delegate to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to them directly regarding any of the terms of their employment, and they would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

34.     Upon information and belief, Franchisee Individual Defendants, JOHN DOES 1-40, are the owners and principals of JOHN DOE CORPORATIONS 1-40 d/b/a FAMOUS FAMIGLIA PIZZERIA. Each of JOHN DOES 1-40 exercised control over the terms and conditions of FLSA Collective Plaintiffs' and Class members' employment within each of their respective Famiglia locations. With respect to FLSA Collective Plaintiffs and Class members, they each exercised their power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment.

35.     At all relevant times, Defendants MAROSA, INC., 96 STREET PIZZA CORP., FAMIGLIA QUEENS, LLC and JOHN DOE CORPORATIONS 1-40 each were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

### Franchisor and Franchisee Defendants are Joint Employers:

36.     At all times relevant to this lawsuit, Plaintiffs, FLSA Collective Plaintiffs and Class members were jointly employed by the Franchisor Defendants and their respective Franchisee Defendants.

37.     Each of the Defendants acted directly and indirectly in the interest of one another in relation to the Plaintiffs, FLSA Collective Plaintiffs, and the Class.

38.     The Defendants were not completely dissociated from one another with respect to the Plaintiffs' employment.

39.     Through their use of tools and resources, the Franchisor Defendants engage in sufficient control over each franchisee's general business operations, beyond protection of the brand. The Franchisor Defendants promulgate and implement management and operation policies and practices at all of the franchise locations.

> "Q: What kind of guidance do[es the parent company] provide?
> What kind of suggestions –
> A: How to run the actual operation."
> *(Anton Vataj Deposition, 46:17-20)*

40.     Each franchise agreement states that the Franchisor Defendants have developed procedures for operations, management and financial control, which may be changed, improved and further developed by the Franchisor Defendants from time to time, which are to be implemented at each of the franchise locations.

41.     The Franchisor Defendants provide materials for use in training store manager and employees, including employee manuals and a new hire packet, which include information such as dress code, pay rates, pay schedule, among other things. *(Paul Kolaj Deposition, 44:18-21). (Christine Panas Deposition, 65:5-10).*

42.     The Franchisor Defendants host and require a week-long training program for the Franchisee's Operational Principals and General Managers that run day-to-day operations in the franchisee locations to ensure that the Franchisor Defendants' policies

are implemented and uniform at all Famiglia locations. *(Anton Vataj Deposition, 47:14-25, 48:2-12).*

43.     The Franchisor Defendants send employees from the company-owned stores to work at new franchisee stores when they open, to train the staff at the new location.

> "A: We take, you know, from different company owned stores, like we take a manager from San Antonio.
>
> Q: Oh, okay. Got it. You would take a manager from one store that you own or a pizza maker from another store you own and send them to a new franchisee location and train up all the staff there?
>
> A: Yes."
>
> *(John Kolaj Deposition, 37:9-17)*

44.     The Franchisor Individual Defendants make regular announced and unannounced visits to inspect the stores to ensure each location is complying with the policies and practices of the Franchisor Defendants.

> "Q: And you would just visit the stores, right, to make sure they are operating correctly, the franchisee stores, right?
> A: Yes."
> *(John Kolaj Deposition, 14:25, 15:2-4)*
> "A: [To] the owner, I would say these are some of the violations you have. Please cure them.
> Q: What if they don't?
> …
> Like would you take away their franchisee license or would you –
> A: I mean if they were that egregious, of course, yes."
> *(John Kolaj Deposition, 16:20-23, 17:14-17)*

45.     The Franchisor Defendants require each of the franchisee locations to use the same sauce, pasta, olive oil and other ingredients which they are to obtain from the same distributor in all franchise locations. *(Anton Vataj Deposition, 34:8-25, 35:2-4)*

46.     The Franchisor Defendants retained a Human Resources Director who established, promulgated and enforced wage and hour policies at all Famiglia locations. They provide guidance to all locations via a common Human Resources department.

> "A: …I know Christine was part of the HR department because I spoke to her a few times.
>
> Q: Okay. What did you need to speak to her about?
>
> A: Labor laws.
>
> …
>
> Q: Did she give you guidance?
>
> A: Some.
>
> Q: About labor laws and regulations?
>
> A: Yes."
>
> *(Deposition of Anton Vataj, 68:13-25, 69:2-3 )*

47.     Franchisor Individual Defendants possess and exercise the authority to control and manage directly or indirectly the general rules and policies applicable to employees at each of the Famiglia locations.

48.     Franchisor Individual Defendants possess and exercise the authority to change directly or indirectly the terms and conditions of employment, including hiring and firing employees, changing work schedules and duties of employees, among other things at each of the Famiglia locations.

49.     Multiple Famiglia locations, from time to time, share the services of the same employee.

50. At all relevant times, each of the Franchisor Corporate Defendants and Franchisee Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

51. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

52. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and the New York Labor Law.

53. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned spread of hours premium in direct contravention of the New York Labor Law.

54. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime wages in direct contravention of the FLSA and the New York Labor Law.

55. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants at any of their company-owned locations and franchisee locations, , throughout New York State, on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

57. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are

and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them neither the correct minimum wage nor their overtime hours at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

58. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

59. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at any of their company-owned locations and franchisee locations throughout New York State on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

60. All said persons referred to in paragraph 23 above, including Plaintiffs, are referred to herein as the "Class." The class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each

Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

61. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants. Upon information and belief, there are more than forty (40) members of the Class.

62. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime compensation and "spread of hours" premium. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

63. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

64. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour

litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is, empowered to fashion methods to efficiently manage this action as a class action.

65. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and

future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

66. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Plaintiffs and the Class members were paid at least the minimum wage;

e) Whether Defendants properly claimed a tip credit allowance against Plaintiffs and Class members;

f) Whether Defendants properly compensated Plaintiffs and Class members for overtime;

g) Whether Defendants paid Plaintiffs and the Class members the New York State "spread of hours" on days when they worked more than ten hours;

h) Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under the New York Wage Theft Prevention Act; and

i) Whether Defendants provided proper wage notices at time of hiring and annually thereafter as required under New York Wage Theft Prevention Act.

**STATEMENT OF FACTS**

67. In or about February 2011, Plaintiff, CINECIO GONZALEZ, was hired by Defendants to work as a dishwasher, cleaning person and delivery person for the Famous Famiglia restaurant located at 2859 Broadway, New York, New York 10025.

68. Plaintiff CINECIO GONZALEZ worked at such location until on or about October 29, 2013.

69. During Plaintiff CINECIO GONZALEZ's employment at the Broadway location, he generally worked 6 days a week for 12 hours a day. Throughout his employment, Plaintiff CINECIO GONZALEZ received a fixed daily salary of $50 plus tips. Throughout Plaintiff's employment he was paid in cash. Plaintiff was never paid at the proper overtime rate of time-and-one-half for hours worked past 40 in a workweek nor was he paid at least the minimum wage.

70. Defendants claimed an improper tip credit with respect to Plaintiff GONZALEZ and all other tipped employees given Defendants' failure to: (i) provide proper notice to employees of the tipped credit minimum wage rate and the proper overtime rate thereon, (ii) maintain records of tips earned by employees, and (iii) provide proper wage statements to employees showing deductions, as required under New York

State law. Additionally, Plaintiff GONZALEZ and other tipped employees throughout all Famous Famiglia restaurants were required to spend more than 20% of their work day in a non-tipped capacity.

71. On or about October 25, 2009, Plaintiff, RIGOBERTO TETLACTLE TEPOLE, was hired by Defendants to work as a food preparer, cleaning person and delivery person for the Famous Famiglia restaurant located at 2859 Broadway, New York, New York 10025. In or about August 2013, Plaintiff was transferred to work at the Famous Famiglia restaurant located at 734 Amsterdam Avenue, New York, New York 10025.

72. Plaintiff RIGOBERTO TETLACTLE TEPOLE worked at such location until on or about November 3, 2013.

73. During Plaintiff RIGOBERTO TETLACTLE TEPOLE's employment at both locations, he generally worked 6 days a week for 13 hours a day. At the start of his employment, Plaintiff RIGOBERTO TETLACTLE TEPOLE received a fixed weekly salary of $250 plus tips. In October 2009, Defendants raised Plaintiff's weekly salary to $270 where it remained throughout his employment. Throughout Plaintiff's employment he was paid in cash. Plaintiff was never paid at the proper overtime rate of time-and-one-half for hours worked past 40 in a workweek nor was he paid at least the minimum wage.

74. Defendants claimed an improper tip credit with respect to Plaintiff TEPOLE and all other tipped employees of Defendants given their failure to: (i) provide proper notice to employees of their tipped credit minimum wage rate and the proper overtime rate thereon, (ii) maintain records of tips earned by employees, and (iii) provide proper wage statements to employees showing deductions, as required under New York State law.

Additionally, Plaintiff TEPOLE and other tipped employees employed by Defendants were required to spend more than 20% of their work day in a non-tipped capacity.

75. In or about December 1992, Plaintiff, HELEODORO GIL, was hired by Defendants to work as a food preparer, cook and delivery person for the Famous Famiglia restaurant located at 734 Amsterdam Avenue, New York, New York 10025.

76. Plaintiff HELEODORO GIL worked at such location until on or about November 4, 2013.

77. During Plaintiff HELEODORO GIL's employment at the Amsterdam location, he generally worked 6 days a week for 12 hours a day. At the start of his employment, Plaintiff HELEODORO GIL received a fixed weekly salary of $240 plus tips. In 2011, Defendants raised Plaintiff's weekly salary to $360 where it remained throughout his employment. Throughout Plaintiff's employment he was paid in cash. Plaintiff was never paid at the proper overtime rate of time and-one-half for hours worked past forty in a workweek nor was he paid at least the minimum wage.

78. Defendants claimed an improper tip credit with respect to Plaintiff GIL and all other tipped employees of Defendants given their failure to: (i) provide proper notice to employees of the tipped credit minimum wage rate and the proper overtime rate thereon, (ii) maintain records of tips earned by employees, and (iii) provide proper wage statements to employees showing deductions, as required under New York State law. Additionally, Plaintiff GIL and other tipped employees employed by Defendants were required to spend more than 20% of their work day in a non-tipped capacity.

79. In or about February 2010, Plaintiff, NICOLAS XOCHIQUIQUISQUI GARCIA, was hired by Defendants to work as a food preparer, stock person and delivery

person for the Famous Famiglia restaurant located at 734 Amsterdam Avenue, New York, New York 10025.

80.   Plaintiff NICOLAS XOCHIQUIQUISQUI GARCIA worked at such location until in or about August 2013.

81.   During Plaintiff NICOLAS XOCHIQUIQUISQUI GARCIA's employment at the Amsterdam location, he generally worked 6 days a week for 14 hours a day. At the start of his employment, Plaintiff NICOLAS XOCHIQUIQUISQUI GARCIA received a fixed weekly salary of $200 plus tips. In February 2011, Defendants raised Plaintiff's weekly salary to $250 where it remained throughout his employment. Throughout Plaintiff's employment he was paid in cash. Plaintiff was never paid at the proper overtime rate of time and-one-half for hours worked past 40 in a workweek nor was he paid at least the minimum wage.

82.   Defendants claimed an improper tip credit with respect to Plaintiff GARCIA and all other tipped employees of Defendants given their failure to: (i) provide proper notice to employees of their tipped credit minimum wage rate and the proper overtime rate thereon, (ii) maintain records of tips earned by employees, and (iii) provide proper wage statements to employees showing deductions, as required under New York State law. Additionally, Plaintiff GARCIA and other tipped employees employed by Defendants were required to spend more than 20% of their work day in a non-tipped capacity.

83.   Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to the Plaintiffs and other similarly situated employees.

84. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to the Plaintiffs and other similarly situated employees.

85. Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

86. Defendants knowingly and willfully operated their business with a policy of refusing to provide accurate wage statements to Plaintiff and Class Members as required under the Wage Theft Prevention Act, effective as of April 2011.

87. Defendants knowingly and willfully operated their business with a policy of refusing to provide proper wage and hour notices at the beginning of employment and annually thereafter to Plaintiff and Class Members as required under the Wage Theft Prevention Act, effective as of April 2011.

88. Plaintiffs retained Lee Litigation Group, PLLC and the Law Offices of Robert L. Kraselnik, PLLC to represent them and other employees similarly situated in this litigation and have agreed to pay the firms a reasonable fee for their services.

### STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

89. Plaintiffs reallege and reaver Paragraphs 1 through 88 of this Class and Collective Action Complaint as if fully set forth herein.

90. At all relevant times, Defendants were and continue to be employers engaged

in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

91.  At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

92.  Upon information and belief, at all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

93.  At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for their hours worked in excess of forty hours per workweek.

94.  Defendants failed to pay Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

95.  At all relevant times, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs for their hours worked.

96.  Defendants failed to pay Plaintiffs minimum wages in the lawful amount for their hours worked.

97.  Records, if any, concerning the number of hours worked by Plaintiffs and the actual compensation paid to Plaintiffs are in the possession and custody of the Defendants.  Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

98.  Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory rate of time

and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

99. Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

100. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

101. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

102. Plaintiffs are entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

103. Due to the Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime, unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to FLSA 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

104. Plaintiffs reallege and reaver Paragraphs 1 through 103 of this First Amended Class and Collective Action Complaint as if fully set forth herein.

105. At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

106. Defendants willfully violated Plaintiffs' rights by failing to pay Plaintiffs and Class members overtime compensation at rates not less than one and one-half times the

regular rate of pay for each hour worked in excess of forty hours in a workweek.

107. Plaintiffs and the Class members regularly worked more than ten (10) hours in a workday. Defendants willfully and intentionally failed to compensate Plaintiffs and Class members their spread of hours premium, which is one hour's pay at the basic New York minimum hourly wage rate, as required by New York law.

108. Defendants willfully violated Plaintiffs' rights and the rights of Class members by failing to pay their minimum wages in the lawful amount for hours worked.

109. Defendants knowingly and willfully operated their business with a policy of not providing a proper wage statement to Plaintiffs and Class members, in violation of the New York Labor Law.

110. Defendants willfully violated Plaintiffs' and Class members' rights by paying them on a salary basis, in violation of the New York Labor Law because Plaintiffs and Class members are non-exempt employees who must not be paid on a salary basis.

111. Defendants willfully violated Plaintiffs' and Class members' rights by failing to provide them proper notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

112. As a result of Defendants' violation of the New York Wage Theft Prevention Act, Plaintiffs and Class members are entitled to damages of at least $150 per week during which the violations occurred and/or continue to occur.

113. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime, unpaid minimum wages, unpaid spread of hours premium, statutory penalties, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New

York Labor Law §663(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all similarly situated employees, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the New York Labor Law and other wage and hour laws from relevant states;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid overtime compensation due under the FLSA, the New York Labor Law and other wage and hour laws from relevant states;

d.   An award of unpaid minimum wages due under the FLSA, the New York Labor Law and other wage and hour laws from relevant states;

e.   An award of unpaid "spread of hours" premium due under the New York Labor Law;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

g.   An award of statutory penalties including statutory penalties under the Wage Theft Prevention Act, and prejudgment and postjudgment interest;

h.      An award of liquidated and/or punitive damages as a result of Defendants'

willful failure to pay overtime compensation, minimum wage, and "spread

of hours" premium pursuant to the New York Labor Law and other wage

and hour laws from relevant states;

i.      An award of prejudgment and postjudgment interest;

j.      An award of costs and expenses of this action together with reasonable

attorneys' and expert fees;

k.      Designation of Plaintiffs as Representatives of the FLSA Collective

Plaintiffs;

l.      Designation of this action as a class action pursuant to F.R.C.P. 23;

m.      Designation of Plaintiffs as Representatives of the Class; and

n.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury on all issues so triable as of right by jury.

Dated:  April 17, 2015

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

LAW OFFICES OF
ROBERT L. KRASELNIK, PLLC
Robert L Kraselnik (RK 0684)
271 Madison Avenue
Suite 1403
New York, NY 10016
Tel.: 212-576-1857
Fax: 212-576-1888

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By: _/s/ C.K. Lee_
    C.K. Lee (CL 4086)